CARLTON, J.,
dissenting:
¶ 10. Because I submit that this case should be remanded to the trial court for further evidentiary hearing consistent with Gladney v. Clarksdale Beverage Co., 625 So.2d 407 (Miss.1993) and James v. State, 912 So.2d 940 (Miss.2005), I respectfully dissent from the majority’s opinion. I will first review the evidence presented at the evidentiary hearing in the trial court and then review Mississippi law as applied to the facts of this case.[1]
A. Threshold Showing of Extraneous Prejudicial Information in the Record
¶ 11. I respectfully submit that the evidence in the record clearly supports a threshold finding that Tate heard extraneous prejudicial information about Roach’s possible sentence. The supreme court addressed the sufficiency of threshold showings in Lattimore v. State, 958 So.2d 192, 204 (¶ 39) (Miss.2007), explaining that, at a minimum, good cause must exist to show improper outside influence or extraneous prejudicial information to overcome the presumption of an impartial jury. While recognizing the minimal standard of good cause, the supreme court further provided that the preferable showing should clearly substantiate that a specific, non-speculative impropriety has occurred. Id. (quoting Gladney, 625 So.2d at 419).
¶ 12. Tate’s testimony under oath at the evidentiary hearing before the trial court and his post-trial affidavit were consistent about the key concern of the prejudicial extraneous information regarding Roach’s sentence if found guilty. Tate remained consistent about hearing information from law enforcement officers in the hallway during trial even when questioned by the State’s investigator and by the prosecutor. I respectfully submit that the record shows that Roach met at least the minimal *152 threshold showing of good cause to believe that he heard extraneous prejudicial information during trial warranting an inquiry into whether the jury heard the extraneous prejudicial information and, if so, whether it was reasonably possible that the information altered the verdict. Highlighting the need to conduct further inquiry, Tate testified that other people were also in the hallway during trial when the officers communicated with Tate about Roach’s sentence for the offenses being tried. I now turn to examine Tate’s testimony about the extraneous prejudicial information.
¶ 13. At the post-trial evidentiary hearing considering Roach’s post-conviction relief petition, Tate was impeached as to the details of his affidavit, but Tate remained consistent that he heard extraneous information from the officers in the hallway pertaining to Roach’s sentence in the event of a guilty verdict. The record shows that Tate was impeached as to the details in his affidavit pertaining to whether he initially stopped the officers in the hallway to inquire as to Roach’s sentence. Tate testified that he overheard the officers discussing Roach’s sentence, and upon hearing the sentence, he then turned to them and inquired. In contradiction to his affidavit, Tate denied approaching the officers first in the hallway. Tate was also questioned and impeached as to whether this information impacted his vote on the verdict, notwithstanding the limits of Mississippi Rule of Evidence 606(b) and the passage of approximately six years between the trial and the post-trial hearing. When investigating juror misconduct or the influence of extraneous prejudicial information, we must acknowledge that Mississippi precedent and Rule 606(b) prohibits one from asking a juror such questions and leaves the determination of the impact on the jury for the trial judge to decide. Interestingly, Tate testified that after receiving his affidavit about the communication, the State’s investigators told him that they were going to investigate him, but Tate denied receiving any overt threats. Tate never wavered in his testimony that he overheard the officers’ conversation in the hallway during trial.
¶ 14. The testimony of the State’s investigator, R.D. Thaggard, an investigator with the Hinds County District Attorney’s Office, also shows that Tate remained consistent about hearing the officers’ conversation in the hallway during trial. Thag-gard testified that Tate admitted not reading his affidavit before signing it, but Thaggard testified that Tate did not deny hearing the officers’ conversations in the hallway during trial. Thaggard also admitted telling Tate that he (Tate) would be investigated. Then, Thomas Kesler, a Hinds County district attorney, examined Kenny Lewis on the stand as to what Lewis observed during a pretrial interview conducted by Kesler with Tate. Again, the testimony elicited by Kesler about his own pretrial interview with Tate shows that Tate remained consistent that he heard the conversations of the officers pertaining to Roach’s sentence. The contradiction in the testimony elicited by Kesler pertained not to the actual prejudicial extraneous information but to whether Tate approached the officers in the hallway first to inquire as to the sentence or whether Tate overheard the information from the officers.
B. Discussion of the Law as Applied to these Facts
¶ 15. I would remand this case for further evidentiary hearing since the record supports a threshold showing of the receipt of extraneous prejudicial information by a juror. The parameters of Rule 606(b) limits the proper scope of jury testimony. A review of Tate’s testimony shows that *153 the examination of him as a witness ventured outside the parameters of Rule 606(b) and the standards as set forth in Gladney, 625 So.2d at 418-19, by inquiring as to whether he personally believed or recalled whether the extraneous information impacted his own particular deliberations. Guidance in the supreme court precedent of Gladney explains that the trial court must determine whether it was reasonably possible that the extraneous prejudicial information altered the verdict, and juror testimony should be limited to whether the communication occurred, and if so, it’s contents.[2] This dissent now turns to examine the procedure set forth in Gladney and the application of that precedent to this case.
¶ 16. Since the record supports a threshold showing that extraneous information pertaining to Roach’s likely sentence was heard by a juror (Tate), then the next step required a determination of whether this information was conveyed to the rest of the jury. According to Rule 606(b) and Mississippi precedent, such testimony should not focus on a particular juror’s deliberations. The supreme court in Gladney set forth the procedure to follow when inquiring into a juror’s verdict. The supreme court explained that when the threshold showing is met, the trial judge must limit his questions to whether the communication occurred and the contents of the communication. Id. at 419. Then, the trial court must determine whether it is reasonably possible that the communication altered the verdict. Id.
¶ 17. Recently, this Court, in Wilson v. State, 83 So.3d 421, 433 (¶ 31) (Miss.Ct.App.2011) and the supreme court in James, 912 So.2d at 950-51 (¶ 18), reviewed Gladney’s “systematic method” to be used by trial courts when inquiring into juror verdicts under Rule 606(b) of the Mississippi Rules of Evidence. The Wilson court stated, in part, as follows:
Rule 606(b) states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing assent to or dissent from the verdict or indictment or concerning the juror’s mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror’s affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.
Gladney provides that at the beginning of the inquiry, “the trial court and opposing counsel must be made aware of any potential juror misconduct when this evidence is manifested.” Gladney, 625 So.2d at 418. “Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality.” Id. If the threshold showing is made, then the trial court should conduct a post-trial hearing. Id. at 419. The Mississippi Supreme Court further provided:
*154 The scope of the hearing is, however, limited; the proper procedure is for the judge to limit the questions asked the jurors to determine whether the communication was made and what it contained. Once it is determined that the communication was made and what the contents were, the court is then to decide whether it is reasonably possible this communication altered the verdict.
Id. “Gladney offers no interpretation nor explanation which is inconsistent with, or different from Rule 606(b). That is to say that it would be inappropriate, and in violation of Rule 606(b), for any juror to be questioned with regard to whether or not the extraneous information actually altered his verdict.” James, 912 So.2d at 951 (¶ 18). See also Rutland, 60 So.3d at 142 (¶ 21).
Wilson, 83 So.3d at 433-34 (¶ 31). This Court in Wilson also acknowledged the importance of determining if the entire jury was exposed to extraneous information. The Wilson court, in reviewing supreme court precedent as set forth in James, stated as follows:
In James, Dayon James was charged in a multiple-count indictment for the murder of Shanekque Keyes and the murder of Alonso Smith in December 1995. Id. at 943 (¶ 4). During pretrial motions, the trial court granted James’s motion to sever the counts, and the State elected to try Shanekque’s case first. Id. Great efforts were expended to ensure that no one mentioned any alleged injuries to Alonso in the jury’s presence. Id. Jury selection for James’s trial began on July 8, 1996. Id. at (¶ 5). At the conclusion of the trial, James was convicted of capital murder and sentenced to life in prison. Id. at 944 (¶ 6). On the day after the trial, defense counsel was informed of the possibility that the jury had been exposed to extraneous prejudicial information. Id. at (¶ 7). A hearing was held on August 14, 1996, and Wanda Conway, a member of the venire, testified that on July 9, 1996, when the court recessed for lunch during voir dire, she went to lunch with another prospective juror and Juror Shawn Watson. Id. Conway testified that the women discussed the case during lunch, including that James was accused of murdering another child. Id. Conway also testified that later that afternoon, the entire group was sent to sit in another courtroom while the trial court conducted individual voir dire, and while there, she heard many members of the venire discussing the case and that there were two children involved. Id. at 944-45 (¶ 8). Conway testified that she spoke with Watson the day after the trial ended, and Watson told her that some members of the jury knew about the second child and kept bringing it up in the jury room. Id. at 945 (¶ 9). Conway also testified that Watson told her that several jurors said they found James guilty because “it was two children.” Id. Lastly, Conway testified that Watson told her that while in the jury room, several jurors discussed the docket sheet that they saw posted outside the courtroom which indicated that James was charged with an additional crime. Id. After presentation of this testimony in support of its motion, defense counsel then requested that the trial court conduct further investigation into the jury’s possible exposure to extraneous information, pursuant to Glad-ney. Id. at (¶ 10). The trial court determined that there had not been a threshold showing that further inquiry was necessary under Gladney, and denied James’s motion. Id.
On appeal, we reversed and remanded the James case to the trial court, in *155 structing the “trial court to hold a hearing for the purpose of determining whether extraneous prejudicial information was introduced into the jury’s deliberations concerning the death of the other child.” Id. at (¶ 11) (citation omitted). This Court denied the State’s motion for rehearing, withdrew the original opinion, and substituted a modified opinion. Id. at (¶ 12). James then filed a motion for rehearing, which the Court dismissed. Id. at 945-46 (¶ 12). Both the State and James then filed petitions for writ of certiorari, which the Mississippi Supreme Court denied. Id. at 946 (¶ 12). The James case was remanded to the trial court to reconvene and to poll the jury concerning its possible exposure to extraneous information. Id. at (¶ 13). Ultimately, eleven of the twelve jurors and both alternates were located and summonsed to appear in court. Id. at (¶ 14). A hearing was held on May 15, 2001, and eleven jurors and one alternate appeared to testified. Id. The trial court questioned each juror individually, refusing to allow the attorneys to question the jury. Id. at 946-49 (¶¶ 14-15). The trial court determined that extraneous information had been communicated to the jury; however, the trial court found that “this communication was incidental and that the jury verdict should not be impeached.” Id. at 949 (¶ 15). On appeal, this Court affirmed the trial court’s judgment. Id. at (¶ 16).
After this Court denied James’s motion for rehearing, the Mississippi Supreme Court granted James’s petition for writ of certiorari. Id. (citations omitted). The Mississippi Supreme Court ultimately determined, however, that the trial court’s failure to reconvene the jury fully for the hearing on May 15, 2001, was reversible error mandating a new trial, and the passage of time which made reconvening the jury impracticable was unfairly prejudicial to James and violated his due-process rights. Id. at 951-52 (¶¶ 20-21). Further, the supreme court found, based on the standard established in Gladney, ■ that it was “reasonably possible that the communication altered the verdict” and that a new trial should be granted. Id. at 952 (¶ 22). In support of its finding, the supreme court in James pointed to Conway’s testimony that: Watson told her that many members of the venire discussed the allegations regarding a second child while waiting in the separate courtroom; Watson told her after the trial that some members of the jury knew about the second child and kept bringing it up in the jury room; and Watson indicated that the docket sheet supported the allegation that a second child was involved. Id. at 952 (¶¶ 22-24). Additionally, the supreme court found in James that during the May 2001 hearing, several of the jurors admitted knowledge of the fact that James was accused of killing a second child. Id. at 952-53 (¶¶ 24-26). Finally, the supreme court held that the trial court erred when it refused to allow the attorneys to examine the jurors during the May 2001 hearing. Id. at 953 (¶28).
Id. at 434-36 (¶¶ 33-36).
¶ 18. Significant to this case, as explained in Wilson, the Mississippi Supreme Court reversed this Court’s decision in James, finding that the trial court’s failure to fully reconvene the jury to determine if it was reasonably possible that the extraneous prejudicial information affected the verdict of the jury resulted in a violation of the defendant’s due-process rights. In this case, a review of the record reflects that the trial court heard testimony from only one juror, Tate. However, as established in Rule 606(b) and Mississippi precedent, in order to satisfy constitutional *156 due-process demands, the trial court was required to fully reconvene the jury to determine if the other jurors were exposed to the information regarding Roach’s sentence and, if so, if it was reasonably possible that the information impacted the verdict. The trial court’s inquiry improperly focused on a particular juror’s deliberations. See James, 912 So.2d at 950-51 (¶ 18).
¶ 19. Based on the foregoing reasons, I respectfully dissent.

. See James, 912 So.2d at 949-53 (¶¶ 17-28); Gladney, 625 So.2d at 417-19; Wilson v. State, 83 So.3d 421, 433-36 (¶¶ 31-38) (Miss.Ct.App.2011). See also M.R.E. 606(b).

. Gladney, 625 So.2d at 418-19.